R. W. GILL, ADMINISTRATOR OF
SOMERVILLE PINKNEY
AND HENRIETTA M. HALL,      September Term, 1853.
vs.
WILLIAM D. CLAGETT.

[PRIORITY OF ASSIGNMENT—ASSIGNMENT OF A SUIT—CONSTRUCTION OF WILL.]

A suit in this court for the recovery of a sum of money was in October, 1835, for a valuable consideration assigned by the plaintiffs, and the assignee had the case entered for his use upon the docket of the Court of Appeals, where it was then pending upon appeal, and in January, 1836, had the same cause marked for his use upon the docket of this court. The cause being subsequently remanded for amendment and further proof, an amended bill was filed in 1838, when the entry for the use was not marked upon the docket, and has not been since. Held—

That this assignee was not guilty of laches or neglect, and is entitled to the proceeds of the suit in preference to a party who received an assignment of the same in 1841 or 1845, to secure a pre-existing indebtedness.

A party who has obtained the assignment of a suit or decree, has done all which can be reasonably required of him when he has caused the entry to his use to be made ; he is not bound to see that the entry to his use is duly copied whenever the cause is transferred from docket to docket.

A promise to pay a creditor out of the fruits of a pending action, and a promise to assign the action to him are very different things ; in the former case credit is given to *the party* making the promise ; in the latter, a *specific security* is looked to.

A testator devised certain lands in trust for "the use and benefit" of his daughter during the life of her husband, directing the trustees not to pay the proceeds to him, but any "receipts or writings witnessing the payment of such proceeds or profits to his daughter shall be a sufficient discharge of said trustees." Held—

That the daughter was entitled during the life of her husband to receive the proceeds of the trust estate, and having the power to receive, she had the correlative power to dispose of them, at least for the support of herself and children.

[The devise in the will of Joseph W. Clagett in favor of his daughter, Henrietta Maria Hall, referred to in the latter part of the following opinion of the Chancellor, is as follows :

"*Item.* I give and devise unto my son, William D. Clagett, and my son-in-law, Charles Hill, and their heirs forever, one-half of all my lands in Calvert county, in trust to and for the use and

benefit of my daughter, Henrietta Maria Hall, and her children, and my will and desire is that the said trustees shall not be compelled to pay into the hands of Richard Hall, the husband of the said Henrietta Maria Hall, any part of the proceeds of the said land, but that the same shall remain in the hands of said trustees during the life of the said Richard Hall, and that any receipts or writings witnessing the payment of such proceeds or profits to my said daughter, Henrietta Maria Hall, shall be a sufficient discharge of said trustees, and I do hereby authorize and empower the said trustees, or the survivor of them, to sell and dispose of the said land at any time they or the survivor of them shall think proper, and to invest the proceeds of such sale in other land or in bank stock, as they or he may deem most advantageous. And I do hereby authorize and empower the said trustees to convey the said land in case they should think proper to sell the same to the purchaser or purchasers thereof by a good and sufficient deed or deeds."

The other facts in the case are sufficiently stated in the Chancellor's opinion, delivered on the 7th of November, 1853.]

THE CHANCELLOR:

The present controversy arises upon the petition of George H. Stewart, executor of the late William Stewart, filed on the 22d of January, 1846, and relates to the disposition of the money paid into court under the order of the 30th of September last, being the proceeds of the note of William D. Clagett, given to the late Somerville Pinkney, acting as solicitor and agent of Henrietta M. Hall, one of the complainants in the original suit.

The proceedings in that case, which will be found reported in 9 *Gill and Johns.*, 80, need not be recapitulated here, but its results and the compromise and settlement which was finally made, are sufficiently explained in this case, a report of which will be seen upon reference to 2 *Md. Ch. Decisions*, 151.

Whilst this latter case was in progress, the present petition was filed, and by it the petitioner claims a portion of the money upon the ground that on the 22d of October, 1835, the said

Henrietta Hall, and her husband, Richard Hall, who was then living, had assigned to the testator of petitioner the money sought to be recovered in the original suit, to secure the payment of a sum of money due him from the said Hall and wife.

At the time this assignment was made, the original cause, being that of the said *Hall and wife* vs. *William D. Clagett and others,* was depending in the Court of Appeals upon appeal from the decree of this court, the object of which suit was to recover from the defendants certain sums claimed by the female complainant under the will of her father, Joseph W. Clagett. The paper containing the assignment is addressed to the clerk of the Court of Appeals, and directs him to enter the cause for the use of the petitioner's testator, William Stewart, the object being as expressed upon the face of the assignment, to secure to him the sum of $170 62, due by the assignors to him for house rent and fire wood, and was made especially in consideration of the said Stewart's agreeing to forbear selling certain property liable to distress; the assignment to be void in case the debt should be paid from other sums, and the surplus, if any, to remain to the sole and separate use of the said Henrietta M. Hall. By a copy of the docket entries in the Court of Appeals of December term, 1835, it appears the case was entered in conformity with the directions, and on the 14th of January, 1836, the same cause in this court was also marked for the use of William Stewart.

The cause in the Court of Appeals was heard and decided at December term, 1837, when for the reason assigned it was remanded to the Court of Chancery for the purpose of making a new party, and taking further proof, &c. An amended bill making such new party was filed on the 14th of February, 1838, but in docketing the case the Register omitted the entries which had been made in the original cause, and the use, therefore, to William Stewart did not appear among the docket entries of the case made by the amended bill, though the amended bill was nothing more than a continuation of the original cause.

It was while the case made by the amended bill was depending that the compromise and settlement of the 27th of Febru-

ary, 1842, was made, and the money then ascertained to be due Hall and wife being now paid and brought into court, the question as to its proper application is presented and has been argued upon the petition of the executor of William Stewart, already referred to, and the answer to said petition by Richard B. Darnall, filed on the 13th of March, 1847.

By a paper filed in the cause on the 5th of July, 1845, the genuineness of which, as of all other papers and documents on both sides, is admitted, it appears that Mrs. Hall, her husband being then dead, on the 12th of the preceding month of June, assigned and transferred to said Darnall all her interest in the said suits, and in the note of William D. Clagett before mentioned, and authorized and empowered him to have said suits entered for his use, and to prosecute the same, and to collect the money due on the note by suit or otherwise. Upon the face of the assignment it was stated to be in consideration of a previous assignment in favor of Darnall, executed by Mrs. Hall about the 19th of August, 1841, but which was lost, and for other valuable considerations; and Darnall in his answer states that many years anterior to 1841 he had advanced large sums of money for the support of Hall and his wife, and their family, under the promise and full belief that they would be repaid to him out of the money they might recover in this suit. That on the 19th of August, 1841, he came to Annapolis and procured from the solicitor of Hall and wife the form of an assignment which was executed by Mrs. Hall, her husband being then dead, to secure him in part for his said advances the sum of one thousand dollars, and that this assignment, which was sent to Annapolis, has been lost or mislaid.

The case, then, as exhibited by the proceedings in the cause, is simply this: Mrs. Henrietta M. Hall and her husband, Richard Hall, are prosecuting a suit in the Court of Chancery for the recovery of a sum of money, or the proceeds and profits of certain property, held by trustees for her use under the will of her father. Whilst that case is depending in the Court of Appeals upon appeal from the decree of the Chancellor, Mrs. Hall and her husband, on the 22d of October, 1835, for a valu-

able and meritorious consideration, assign the same to William Stewart, as expressed in the assignment, and the clerk of the Court of Appeals, according to the directions of the assignors, entered the case for his use. Afterwards, on the 14th of January, 1836, the same cause was marked for Stewart's use in the Chancery Court. This was the state of the case when the Court of Appeals, at December term, 1837, remanded the cause to the Court of Chancery for the purpose of amendment by making a new party and taking further proof, and because the use to Stewart was not marked on the docket, when and since the amended bill was filed in 1838, it is alleged that Stewart has been guilty of such laches and neglect as will induce a Court of Chancery to deprive him of his security.

I cannot bring myself to think so. He had done everything which could be required of the most cautious and prudent man. He had caused the interest he had in the suit to be exhibited in both courts, and if from the great number of docket entries it was not convenient to enter the use to him when the amended bill was filed, this surely should not impair his right. It was the act of the clerk and not his act.

Certainly a party who has obtained the assignment of a suit or decree has done everything which can reasonably be required of him when he has caused the entry to his use to be made. To insist that he must not only do this, but that he shall likewise see whenever the cause is transferred from docket to docket, that the entry to his use is duly copied, would, in my judgment, be imposing a very great hardship upon him. It is a requisition which I could not be induced to insist upon unless impelled by considerations much more stringent than exist in this case. Mr. Darnall, the rival claimant, did not take an assignment of this claim in 1841 or 1845 for moneys advanced and paid at the time, but to secure a pre-existing debt, as clearly appears by his answer to the petition of General Stewart. He states, to be sure, that during the period he was making such advances for the support of Hall, his wife and his family, "he did so under the promise and with the full belief that the same would be paid to him out of the sums of money which they might recover

13*

in their said suit," and that in 1841, when the first assignment to him was made, it was to secure to him in part of the claim due him for advances, one thousand dollars. But he does not say there was any promise to assign the suit to him at any time prior to the year 1841, when the first assignment was executed, when his claim for advances exceeded the amount subsequently recovered from the defendant, Clagett. The suit had, in fact, been depending since the year 1832, and no reason can be given why Darnall did not take an assignment, if his claim was to be secured in that way. A promise to pay a creditor out of the fruits of a depending action, and a promise to assign the action to him are very different things. In the one case credit is given to the party making the promise, that is, that he will make a proper application of the money when recovered; in the other a specific security is looked to, the creditor proposing to take it in his own hands, and not to trust his debtor with the receipt and disposition of the money. Darnall then does not stand in the attitude of a *bona fide* purchaser without notice, paying his money at the time the transfer was made to him. His position is that of a creditor taking the assignment of a claim to secure a pre-existing debt due for advances not made upon any promise even to make him such assignment. Whatever Mr. and Mrs. Hall may have promised him whilst he was making the advances, and whatever his belief may have been, there was no engagement on their part to assign him the claim, and considering the large amount claimed in the suit against Clagett and others, it is by no means certain that he would have been unwilling to advance means for the support of Hall and wife because of the small amount they had assigned to Mr. Stewart.

Mr. Stewart then being the first assignee to secure a claim fairly and justly due him, is clearly entitled to be paid first, unless as is contended by the solicitor of Mr. Darnall, there are circumstances in the case sufficiently strong to raise a presumption that he has been paid, and I can see nothing in the case to warrant such presumption. Indeed, if the letter from Mrs. Hall to the late Register of this court, dated the 26th of January, 1836, can be used for any purpose, it is in opposition

to such presumption, as it expressly prohibits the payment of any order except that which she had given for the payment of her fee due her solicitors.

There is, in my opinion, nothing in the objection raised by the answer, that under the will of Joseph W. Clagett, Mrs. Hall had no capacity, during the life of her husband, to make the assignment to Mr. Stewart. That assignment was made to secure a claim due for house rent and firewood furnished for the shelter and accommodation of himself and family, and it is not readily to be supposed that the testator, who was the father of Mrs. Hall, designed to deny to her the right to use the trust property for the payment of claims of that character.

The object of the testator was evidently to prevent the trustees from paying any portion of the proceeds of the trust estate to Mr. Hall, but the receipt of Mrs. Hall were in express terms made sufficient discharges to the trustees, and I understand the will to mean receipts given by her during coverture, for as the trust was to determine with the death of Mr. Hall, there could be no necessity or propriety for saying her receipts after his death should be valid acquittances, as the trust upon that event ceased and the property vested in her, disencumbered of it. She was, therefore, entitled during the lifetime of her husband to receive the proceeds of the trust estate, and being entitled to receive, had the correlative power to dispose of such proceeds, at least for the support of herself and her children, and this, as I conceive, she might do even without the concurrence of her husband, who united with her in the assignment to Mr. Stewart.

In addition to the claim of $170 62, to secure which the assignment was made, the petitioner insists that he is entitled to be paid certain costs said to have been incurred by him in the progress of the cause. But in my opinion there is no foundation for the claim to be paid such costs out of this fund.

The assignment was made specifically to secure the payment of the sum of $170 62, with interest from the 22d October, 1835, out of the money to be received in the pending suit, and the surplus, if any, was reserved for the sole and separate use of Mrs.

Hall.   This surplus she has disposed of by her assignment to Mr. Darnall, and such surplus, therefore, must be paid to him.

GEORGE H. STEWART, for Petitioner.
A. RANDALL, for Darnall.